UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| FRANK GLAZE | CIVIL ACTION |
| VERSUS | NO: 13-6604 |
| HIGMAN BARGE LINES, INC. | SECTION: "S" (5) |

ORDER AND REASONS

**IT IS HEREBY ORDERED** that Higman Barge Lines, Inc.'s Motion for Summary Judgment (Doc. #16) is **GRANTED**, and plaintiff's claims are **DISMISSED WITH PREJUDICE**.[1]

BACKGROUND

This matter is before the court on a motion for summary judgment filed by defendant, Higman Barge Lines, Inc. Higman argues that it is entitled to summary judgment because plaintiff, Frank Glaze, cannot establish that he was injured as the result of an accident aboard a Higman vessel, or that Higman was negligent or provided an unseaworthy vessel.

In December 2009, Higman hired Glaze as a relief captain. At that time, Glaze had worked on tugboats in various capacities since 1972. In 2010, Glaze was assigned to Higman's tugboat the M/V SNIPE to work as a relief pilot. Glaze worked aboard the M/V SNIPE until August 19, 2013, when Higman temporarily reassigned him to the M/V TEXIAN while the M/V SNIPE went into the shipyard for repairs. Glaze worked aboard the M/V TEXIAN until August 23, 2013. Thereafter, he took time off from August 23, 2013 to September 10, 2013. From September 10, 2013 to October 1, 2013, Glaze again worked aboard the M/V SNIPE. Glaze did not return to work after his hitch ended on October 1, 2013. Glaze did not report any type of accident or injury to Higman in July or August of 2013.

---

[1] Higman's Motion in Limine (Doc. #17) to exclude the testimony and evidence of plaintiff's proposed liability expert, David E. Cole, is rendered moot by this ruling.

On August 30, 2013, Glaze was examined by a physician as part of his application to renew his captain's license. Glaze denied any physical injury or limitations, and the physician found that he did not to have any physical limitations. On September 5, 2013, Glaze saw Dr. David Cox with complaints of right arm and back pain, but denied any recent injury. On October 2, 2013, Glaze saw Dr. Shawn Figari complaining of knee pain. Glaze told Dr. Figari that he could not recall any specific injury, but that he had been achy.

On October 22, 2013, Glaze applied to Reliance Standard Life Insurance Company for disability benefits, claiming that he was injured on July 25, 2013, while "chipping with a needle gun."

On December 9, 2013, Glaze filed this suit against Higman alleging that he was injured while working aboard the M/V SNIPE on or about August 27, 2013, a date on which Glaze was off from work. Specifically, Glaze alleges that he "experienced an accident which resulted in serious painful injuries to his arms, hands and other parts of his body while employed by **HIGMAN BARGE**," and claims that Higman was negligent under the Jones Act, provided an unseaworthy vessel, and is liable for maintenance and cure. The lawsuit was Higman's first notification of Glaze's claimed injury.

Glaze claims that his injuries were caused by using a needle gun to chip and grind rust from the M/V SNIPE's bulwarks and rub rail. He claims that Captain Mark Damge, ordered him to do the work, and that John Ramirez, a tankerman, saw him using the needle gun. At his deposition, Glaze admitted that he could not have been injured on August 27, 2013, because he was not working aboard a Higman vessel on that date. He also admitted that he could not have been injured on July 25, 2013, as stated in the disability benefits application, because the M/V SNIPE was discharging

product on Glaze's watch on that date, which meant that he would not have been doing chipping work. After reviewing the vessel's logs, Glaze now claims that he was injured on July 27 or July 30, 2013, because on those dates he, Captain Damge, and Ramirez were all aboard the M/V SNIPE and the vessel was docked awaiting instructions, which indicates there was down time for Glaze to perform chipping work. The vessel logs do not state that Glaze actually performed chipping work on either of those dates. Ramirez testified at his deposition that he does not recall Glaze using a needle gun to chip paint in July or August 2013. Further, Captain Damge testified the he would not have ordered Glaze to chip paint, because as the relief captain, Glaze's primary responsibility was to monitor the wheelhouse. Captain Damge testified that if he did give such an order before he went off watch, Glaze, as the primary person in charge on his watch, was supposed to order the deck crew to perform the work.

When asked at his deposition if he had an accident, Glaze testified: "[a]ll I know is I started hurting after I had been chipping and grinding and hanging over the side. I mean, it just continually got worse." He denied reporting any injury to Captain Damge, anyone else on the vessel, or Higman's office either verbally or by filing an accident report. Glaze also testified that he did not drop the needle gun or grinder, did not fall, nothing fell on him, and nobody hit him with anything. Glaze has not claimed, and there is no proof, that there was any defect with the needle gun.

Higman filed a motion for summary judgment arguing that Glaze cannot prove that he was injured in the service of a Higman vessel on any specific date as alleged in the complaint. Higman points out all of the inconsistencies in the dates on which Glaze claims to have been injured, the fact that Glaze never reported an injury to Higman or any physician during the time that he claims to have been injured, and that Ramirez, the person Glaze claims witnessed him using a needed gun,

3

testified that he never saw Glaze use a needle gun in July or August 2013. Higman also argues there is no proof that it was negligent under the Jones Act or that it provided an unseaworthy vessel.

## ANALYSIS

### A.     Summary Judgment Standard

Summary judgment is proper when, viewing the evidence in the light most favorable to the non-movant, "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Amburgey v. Corhart Refractories Corp., 936 F.2d 805, 809 (5th Cir. 1991); FED. R. CIV. PROC. 56(c).  If the moving party meets the initial burden of establishing that there is no genuine issue, the burden shifts to the non-moving party to produce evidence of the existence of a genuine issue for trial.  Celeotex Corp. v. Catrett, 106 S.Ct. 2548, 2552 (1986).  The non-movant cannot satisfy the summary judgment burden with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence.  Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).  If the opposing party bears the burden of proof at trial, the moving party does not have to submit evidentiary documents to properly support its motion, but need only point out the absence of evidence supporting the essential elements of the opposing party's case. Saunders v. Michelin Tire Corp., 942 F.2d 299, 301 (5th Cir. 1991).

### B.     Jones Act Negligence and Unseaworthiness

Jones Act negligence and unseaworthiness claims are separate causes of action and are treated as such.  See Brunner v. Maritime Overseas Corp., 779 F.2d 296, 298 (5th Cir. 1986).  In this case, the basis of both the negligence and unseaworthiness claims by Glaze against Higman is that he was injured as a result of using a needle gun to chip paint on specific date.  He claims that Higman is liable for failing to have a policy limiting the amount of time a crew member performs

such work, failing to have a job safety analysis regarding such work, and that Captain Damge failed to provide adequate instructions regarding the amount of time the work should be done. Glaze also claims that Captain Damge should not have ordered that chipping work be done when the vessel was about to go to drydock for scheduled maintenance where such work would be completed. Higman argues that Glaze cannot prove that he had an accident or was injured while using a needle gun aboard a Higman vessel on any date in July or August 2013.

Under the Jones Act, 46 U.S.C. § 30101, et. seq, a seaman's employer is liable for damages if the employer's negligence, including negligence of the employer's officers, agents, or employees, caused the seaman's injury. See Gautreaux v. Scurlock Marine, Inc., 107 F.3d 331, 335 (5th Cir. 1997) (en banc); see also Hopson v. Texaco, Inc., 86 S.Ct. 765, 766 (1966). The employer is held to a standard of ordinary prudence under the circumstances. Id. "An employer 'has a continuing duty to provide a reasonably safe place to work and to use ordinary care to maintain the vessel in a reasonably safe condition.'" Lett v. Omega Protein, Inc., 487 Fed. Appx. 839, 843 (5th Cir. 2012) (quoting 1 Admiralty & Maritime Law § 6-22 (5th ed.)). "Because the amount of care exercised by a reasonably prudent person varies in proportion to the danger known to be involved in what is being done, it follows that the amount of caution required, in the use of ordinary care, will vary with the nature of what is being done . . . '" Id. (quoting 1B-III Benedict on Admiralty § 21). The terms "slightest" and "featherweight" have been used to describe the reduced standard of causation between the employer's negligence and the employee's injury, and a seaman must only show that "his employer's negligence is the cause, in whole or in part, of his injury." Gautreaux, at 335; Johnson v. Offshore Express, Inc., 845 F.2d 1347, 1352 (5th Cir. 1988).

"[L]iability based upon unseaworthiness is wholly distinct from liability based upon negligence." Usner v. Luckenback Overseas Corp., 91 S.Ct. 514, 517 (1971). To establish a claim for unseaworthiness under the general maritime law, a seaman must prove "that the owner has failed to provide a vessel, including her equipment and crew, which is reasonably fit and safe for the purpose for which it is used." Jackson v. OMI Corp., 245 F.3d 525, 527 (5th Cir. 2001). A vessel can be unseaworthy if her "gear [is] defective," "appurtenances [are] in disrepair," or "crew [is] unfit." Usner, 91 S.Ct. at 517. Also, "an unsafe method of work may render a vessel unseaworthy." Rogers v. Eagle Offshore Dirlling Servs., Inc., 764 F.2d 300, 303 (5th Cir. 1985). The duty to provide a seaworthy vessel is absolute and completely independent of the duty under the Jones Act to exercise reasonable care; therefore, a showing of negligence is not required. See Phillips v. W. Co. of N. Am., 953 F.2d 923, 928 (5th Cir. 1992). "Although the shipowner has an absolute duty to provide a seaworthy vessel, the vessel need not be 'accident free.' " Simeon v. T. Smith & Son, Inc., 852 F.2d 1421, 1432-33 (5th Cir. 1988). To prevail on an unseaworthiness claim, the seaman "must prove that the unseaworthy condition played a substantial part in bringing about or actually causing the injury and that the injury was either a direct result or a reasonably probable consequence of the unseaworthiness." Johnson v. Offshore Express, Inc., 845 F.2d 1347, 1354 (5th Cir. 1988) (citations omitted).

**C.   Maintenance and Cure**

Higman argues that it is entitled to summary judgment on Glaze's maintenance and cure claim because Glaze has not proved that he was injured in the service of a Higman vessel on the date listed in his complaint, August 27, 2013, or the date listed on his disability benefits application, July 25, 203. Higman points out that Glaze never reported an accident or injury to it until he filed this

6

suit in December 2013, and Glaze denied that he had any injury or accident when he saw various doctors during the relevant time. Higman also argues that nobody saw Glaze work with a needle gun in during the relevant period.

"Maintenance and cure is a contractual form of compensation afforded by the general maritime law to seamen who fall ill or are injured while in the service of a vessel." Jauch v. Nautical Servs., Inc., 470 F.3d 207, 212 (5th Cir. 2006). Maintenance is a subsistence allowance intended to cover the reasonable costs a seaman incurs for his food and lodging during the period of his illness. See Guevara v. Mar. Overseas Corp., 59 F.3d 1496, 1499 (5th Cir. 1995), abrogated on other grounds, Atl. Sounding Co., Inc. v. Townsend, 129 S.Ct. 2561 (2009); Thomas J. Schoenbaum, Admiralty and Maritime Law § 6-32, at 358 (2d ed. 1994). "The right terminates only when maximum cure has been obtained." Bertram v. Freeport McMoRan, Inc., 35 F.3d 1008, 1012 (5th Cir. 1994) (internal quotation and citation omitted). "Maximum cure is achieved when it is probable that further treatment will result in no betterment of the seaman's condition." Springborn v. Am. Commercial Barge Lines, Inc., 767 F.2d 89, 95 (5th Cir. 1985).

"The Supreme Court has long recognized the importance of these remedies . . . and has declared that the doctrines of maintenance and cure are to be liberally construed to benefit the seaman." Cooper v. Diamond M Co., 799 F.2d 176, 179 (5th Cir. 1986) (quoting Caufield v. AC&D Marine, Inc., 633 F.2d 1129, 1132 (5th Cir. 1981)). Ambiguities or doubts regarding the entitlement to maintenance and cure are resolved in the seaman's favor. Id. (citing Vaughan v. Atkinson, 82 S.Ct. 997, 1000 (1962)). The duty is implied in maritime employment contracts and is not premised on the fault or negligence of the shipowner. Silmon, 89 F.3d at 242.

"The vessel owner's obligation to provide this compensation does not depend on any determination of fault, but rather is treated as an implied term of any contract for maritime employment." Jauch, 470 F.3d at 212. Unless a seaman demands and is willfully denied maintenance and cure, he is not entitled to maintenance and cure for periods post-injury in which he is voluntarily employed as a seaman. Dowdle v. Offshore Express, Inc., 809 F.2d 259, 265 (5th Cir. 1987) (citing Pyles v. Am. Trading & Prod., Corp., 372 F.2d 611, 619 (5th Cir. 1967)). In Pyles, 372 F.2d at 619, the United States Court of Appeals for the Fifth Circuit stated:

> A seaman by voluntarily working at his accustomed trade rather than using maintenance and cure to speed his recovery cannot by those tactics enhance the liability of the shipowner any more than the shipowner can be permitted to minimize his liability by refusing to pay and forcing the seaman back to work.

### D.  Glaze's Claim of an Accident and Injury in July or August 2013

Glaze has not created a genuine issue of material fact regarding any of his claims for negligence, unseaworthiness or maintenance and cure. Glaze alleges in his complaint that, on a specific date,[2] he "experienced an accident which resulted in serious painful injuries to his arms, hands and other parts of his body while employed by **HIGMAN BARGE**." He testified at his deposition that he did not drop the needle gun or grinder, did not fall, nothing fell on him, and nobody hit him with anything, but claims that he felt pain after working with a needle gun for a prolonged period in a weird position. Glaze cannot pinpoint when the accident allegedly occurred and there is nothing to corroborate that he had an accident. Glaze claims that the alleged accident occurred on July 27 or July 30, 2013, because the vessel logs indicate that there was downtime on

---

[2] See "Background" section above for a discussion regarding the discrepancies in the date of the alleged accident.

those dates, and it is possible that he was doing chipping work at that time. The vessel logs do not state that any such work occurred on those dates. Further, Damage testified that he never would have ordered Glaze to perform chipping work, and Rameriz, the one person Glaze claims saw him do the work, testified at his deposition that he never saw Glaze doing chipping work in July or August 2013. Moreover, Glaze never reported an accident or injury to Higman until he filed this suit, and when he saw various physicians during the relevant time, he stated that he did not have an accident and could not state a specific injury. Thus, Glaze cannot prove that he had any accident or suffered any injury, involving a needle gun while working aboard a Higman vessel in July or August 2013, and Higman's motion for summary judgment is GRANTED, as to all of Glaze's claims.

## CONCLUSION

**IT IS HEREBY ORDERED** that Higman Barge Lines, Inc.'s Motion for Summary Judgment (Doc. #16) is **GRANTED**, and plaintiff's claims are **DISMISSED WITH PREJUDICE**.

New Orleans, Louisiana, this  23rd  day of October, 2014.


**MARY ANN VIAL LEMMON
UNITED STATES DISTRICT JUDGE**